Martin J. Peck, #16273
Security State Bank Building
107 E. Harvey, Second Floor
P.O. Box 421
Wellington, KS 67152
(620) 326-5997
Fax (620) 326-6887
peck@martinjpeck.com

## UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS
Sitting at Wichita

| | |
|---|---|
| MARC L. HAYS and<br>JENNIFER L. HAYS<br>                *Plaintiffs*<br>       v.<br>CONSUMER LAW ASSOCIATES, LLC;<br>NEIL J. RUTHER; NEW LEAF DEBT,<br>LLC; and EFA PROCESSING, L.P.<br>                *Defendants* | Case No. 11-CV-1163-JWL-DJW |

## **COMPLAINT**

COMES NOW the plaintiffs, Marc L. Hays and Jennifer L. Hays, by and through their attorney, Martin J. Peck, and for their cause of action against the defendants states as follows:

### The Parties

1.    Marc L. Hays and Jennifer L. Hays ("Mr. Hays and Mrs. Hays") are natural persons who reside in Sumner County, Kansas.

2.    Consumer Law Associates, LLC ("Consumer Law Associates") is a Maryland limited liability company with a principal address of 29 W. Susquehanna Ave., Ste. 400, Towson, MD 21204.  Consumer Law Associates may be served with process through its resident agent, Neil J. Ruther, 29 W. Susquehanna Ave., Ste. 400, Towson, MD 21204. Consumer Law Associates has no known member resident in Kansas.

3.    Neil J. Ruther is a natural person believed to be resident in Maryland.

4.      EFA Processing, L.P. ("EFA Processing") is a Texas limited partnership with a principal address of 7668 Warren Parkway, Suite 325, Frisco, TX 75034. EFA Processing may be served with process through its registered agent, C T Corporation System, 350 N. St. Paul St., Ste 2900, Dallas, TX 75201-4234. EFA Processing has no known partner or limited partner resident in Kansas.

5.      New Leaf Debt, LLC, is a Texas limited liability company with a business address of 7668 Warren Parkway, Suite 350, Frisco, TX 75034, that may be served with process through its registered agent William R. Talbert, 1545 E. Stone Road, Wylie, TX 75098.

## Jurisdiction and Venue

6.      This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a)(1).

7.      Venue is appropriate in this district pursuant to 28 U.S.C. § 1391(a)(2).

## Factual Allegations Common to All Counts

8.      "Debt adjustment"—which is variously known as "debt management," "credit counseling," "prorating," "debt consolidation," "budget planning," and "debt pooling"—is regulated in nearly every state.

9.      In at least thirty-three states, debt adjustment contrary to state law is criminalized; in at least eight states, as a felony. The following states have criminalized unlawful debt adjustment as a felony:

    a.    Arizona, see ARIZ. REV. STAT. § 6-133 (2010) (criminalizing, as a felony, violations of ARIZ. REV. STAT. §§ 6-703 & 6-715 (2010) (prohibiting unlicensed debt management), with "each day of violation [constituting] a separate offense");

    b.    Florida, *see* FLA. STAT. § 817.806 (2010) (criminalizing, as a felony, violations of laws regulating debt management contained in FLA. STAT. §§ 817.801 to .806 (2010));

  c. Illinois, *see* 205 ILL. COMP. STAT. ANN. 665/16 (LexisNexis 2010) (criminalizing, as a felony, debt management without a license);

  d. Maryland, *see* MD. CODE ANN., FIN. INST. § 12-929 (2010) (criminalizing, as a felony, violations of the Maryland Debt Management Services Act, MD. CODE ANN., FIN. INST. §§ 12-901 to -931 (2010));

  e. Michigan, *see* MICH. COMP. LAWS § 451.434 (2011) (criminalizing, as a felony, violations of the Michigan Debt Management Act, MICH. COMP. LAWS §§ 451.411 to .437 (2009));

  f. Nebraska, *see* NEB. REV. STAT. ANN. § 69-1215 (LexisNexis 2010) (criminalizing unlicensed debt management);

  g. New Hampshire, *see* N.H. REV. STAT. ANN. § 399-D:24 (LexisNexis 2010) (criminalizing, as a felony for entities, unlicensed debt adjustment and establishing civil penalties and remedies); and

  h. Vermont, *see* VT. STAT. ANN. tit. 8, § 2764 (2010) (criminalizing, as a felony—"[violators] shall be imprisoned not more than two years or fined not more than $ 1,500.00, or both"—debt adjustment without obtaining a license as required by VT. STAT. ANN. tit. 8, § 2752 (2010))

10. The following twenty-five states have criminalized unlawful debt adjustment as a misdemeanor:

  a. Arkansas, *see* ARK. CODE ANN. § 5-63-302 (2010) (criminally prohibiting debt adjusting subject to exclusions contained in ARK. CODE ANN. § 5-63-305 (2010));

  b California, *see* CAL. FIN. CODE § 12102 (2010) (criminalizing operating as a "prorater" without a license as prohibited by CAL. FIN. CODE § 12200 subject to exclusions in CAL. FIN. CODE § 12100);

  c Connecticut, *see* CONN. GEN. STAT. 36a-665 (2010) (criminalizing debt adjustment except for licensees pursuant to CONN. GEN. STAT. 36a-656 (2010) and subject to exceptions contained in CONN. GEN. STAT. 36a-663 (2010));

  d. Delaware, *see* DEL. CODE ANN. tit. 11, § 910 (2010) (criminalizing debt adjustment except as permitted by licensees regulated by DEL. CODE ANN. §§ 2401A - 2439A (2009));

  e Georgia, *see* GA. CODE ANN. § 18-5-4(a) (2010) (criminalizing debt adjusting except as permitted by Chapter 5 of Title 18 of the Georgia Code);

  f Hawaii, *see* HAW. REV. STAT. § 446-2 (2010) (criminalizing debt adjustment except as specifically permitted by HAW. REV. STAT. § 446-3 (2010));

  g Indiana, *see* IND. CODE ANN. § 28-1-29-13 (LexisNexis 2010) (criminalizing debt management without a license);

  h Iowa, *see* IOWA CODE § 533A.13 (2010) (criminalizing debt management without a license);

  i Kansas, see K.S.A. 21-4402(c) (criminalizing debt adjustment);

  b. Kentucky, *see* KY. REV. STAT. ANN. § 380.990(2) (2010) (criminalizing debt adjustment except as specifically permitted by KY. REV. STAT. ANN. § 380.030 (2010));

  c. Louisiana, *see* LA. REV. STAT. ANN. § 14:331 (2010) (criminalizing debt adjustment for profit);

  d. Missouri, *see* MO. REV. STAT. § 425.020 (2010) (criminalizing debt management except for "reasonable compensation" as defined by MO. REV. STAT. § 425.010(4) as being no more than $50 as an initial fee plus $35 per month);

  e. New Mexico, *see* N.M. STAT. ANN. § 56-2-2 (2010) (criminalizing debt adjustment, except for persons excepted by N.M. STAT. ANN. § 56-2-4 (2010));

  f. New York, *see* N.Y. GEN. BUS. § 457 (2011) (criminalizing debt management (called "budget planning" by N.Y. GEN. BUS. LAW § 455(1) (2011)) without a license as required by N.Y. BANKING LAW § 579 (2011));

  g. North Carolina, *see* N.C. GEN. STAT. § 14-424 (2010) (criminalizing debt adjustment except by persons specifically permitted by N.C. GEN. STAT. § 14-426 (2010));

  h. North Dakota, *see* N.D. CENT. CODE § 13-06-02 (2010) (criminalizing debt adjustment unless exempted under N.D. CENT. CODE, § 13-06-03 (2009) which permits debt adjustment by, among others, "lawful practice of law in [North Dakota]" and "nonprofit or charitable corporations" but not for profit debt adjusters);

    i. Ohio, *see* OHIO REV. CODE ANN. § 4710.99 (2011) (criminalizing debt adjustment not performed in conformance with OHIO REV. CODE ANN. § 4710.02 (2011));

    j. Oregon, *see* OR. REV. STAT. § 697.990(3) (2009) (criminalizing failure to register to operate as a debt consolidating agency as required by Or. Rev. Stat. § 697.612 (2007));

    k. Pennsylvania, *see* 18 PA. CONS. STAT. § 7312 (2010) (criminalizing "debt pooling" except that conducted by Pennsylvania attorneys, certain uncompensated public welfare agencies, and non-profits);

    l. South Carolina, *see* S.C. CODE ANN. § 37-7-117 (2009) (criminalizing debt adjustment, among other things, without being licensed as required by S.C. CODE ANN. § 37-7-102 (2009);

    m. South Dakota, *see* S.D. CODIFIED LAWS § 37-34-2 (2010) (criminalizing debt adjustment except as permitted by S.D. Codified Laws § 37-34-3 (2009), which includes, among others, attorneys and those posting a bond with the attorney general);

    n. Wyoming, *see* WYO. STAT. ANN. § 33-14-103 (2010) (criminalizing debt adjustment in violation of WYO. STAT. ANN. § 33-14-102 (2008), which prohibits debt adjustment with the exception of that "incurred in the practice of law in this state")

    o. Virginia, *see* VA. CODE ANN. § 6.1-363.3 (2010) (criminalizing debt management without obtaining licensure as required by VA. CODE ANN. § 6.2-2001 (2010);

    p. Washington, *see* WASH. REV. CODE ANN. § 18.28.190 (LexisNexis 2011) (criminalizing debt adjusting in violation of the provisions of Wash. Rev. Code Ann. § 18.28.010 to .910 (LexisNexis 2011)); and

    q. West Virginia, *see* W. VA. CODE ANN. § 61-10-23 (LexisNexis 2010) (criminalizing debt pooling except for limited exceptions).

  11. In at least twelve states, debt adjustment is subject to regulation by civil and administrative enforcement. The following states have civil and administrative penalties associated with debt adjustment.

    a. Colorado, *see* COLO. REV. STAT. §§ 12.14.5-201 to -242 (Uniform Debt-Management Services Act);

United States District Court, District of Kansas
COMPLAINT
*Marc L. Hays and Jennifer L. Hays v. Consumer Law Associates, LLC,* et al.
Case No. 11-CV-____-___-___

   b. Idaho, *see* IDAHO CODE ANN. § 26-2223(7) (2010) (requiring licensure for debt adjustment);

   c. Maine, *see* ME. REV. STAT. tit. 32, § 6181 (2008) (prohibiting debt management without a license) (Technically, the license is called a "registration," but a "registration may not be issued unless the administrator, upon investigation, finds that the financial soundness and responsibility, insurance coverage, consumer education programs and services component, character and fitness of the applicant and, when applicable, its partners, officers or directors, warrant belief that the business will be operated honestly and fairly within the purposes of this chapter." ME. REV. STAT. tit. 32, § 6173(2) (2008));

   d. Massachusetts, *see* MASS. GEN. LAWS ch. 180, 4A (limiting provision credit counseling services, including debt adjustment, to attorneys and nonprofit charitable corporations);

   e. Minnesota, *see* MINN. STAT. § 332A.03 (2008) (prohibiting unregistered debt management);

   f. Mississippi, *see*, MISS. CODE ANN. § 81-22-5 (2008) (prohibiting unlicensed debt management);

   g. Montana, *see* MONT. CODE ANNO. § 30-14-2004 (2007) (prohibiting unlicensed debt management services);

   h. New Jersey, *see* N.J. STAT. ANN. § 17:16G-6 (2009) (prohibiting unlicensed debt counseling and limiting licensees to "nonprofit social service" agencies and "nonprofit consumer credit counseling" agencies);

   i. Rhode Island, *see* R.I. GEN. LAWS § 19-14.8-4 (2009) (prohibiting debt management without registration);

   j. Texas, *see* TEX. FINANCE CODE § 394.204 (2009) (prohibiting engaging in a debt management service without registration);

   k. Utah, *see* UTAH CODE ANN. § 13-42-104 (2008) (prohibiting debt management without registration); and

   l. Virginia, *see* VA. CODE ANN. § 6.1-363.3 (2009) (prohibiting debt management without licensure).

12. Kansas requires that all debt adjusters register with the Office of the State Banking Commissioner. Listings of debt adjusters so registered as of August 2009 and April 2010, are attached hereto as Plaintiff's Exhibit 1.

13. On September 23, 2009, while in Sumner County, Kansas, Mrs. Hays was researching debt consolidation and management, reviewing several web sites including that of www.newleafdebt.com, which is operated by New Leaf Debt, LLC, and Mrs. Hays sent a message via the website. Shortly thereafter, also in September 2009, Mrs. Hays visited via e-mail about her debt and debt management with Amina Artis Cook, who contacted Mrs. Hays as the result of Mrs. Hays's inquiry to the website.

14. Ms. Cook referred Mrs. Hays to a Ray Evans at Consumer Law Associates, LLC.

15. Mr. Evans called Mrs. Hays on October 29, 2009, regarding her debt and debt management and emailed a "Client Retainer Package" to Mrs. Hays at her email address in Kansas the same day. The return email address was from Ray Evans at EFA Processing. The address for Consumer Law Associates in the agreement was at EFA Processing's address in Frisco, Texas. Mr. & Mrs. Hays completed and sent the Client Retainer Package back electronically on October 29, 2009. A correct copy of the Client Retainer Package, redacted to remove the Hayses' bank account information, is attached as Plaintiff's Exhibit 2.

16. The Client Retainer Package includes the following provisions:

   a. "CLA would like to congratulate you on your decision to take control of your financial future and for allowing us to provide you with one of the most effective solutions to solving your debt elimination needs. . . . As I have discussed with you, the following documents are necessary to begin the debt settlement process." Plaintiff's Exhibit 2, p.3.

   b. "Client is requesting CLA to assist client in the resolution of outstanding debts ('Enrolled Debts') with the following creditors by

    way of negotiation of payment plan or lump sum settlement." Plaintiff's Exhibit 2, p. 6, ¶ 2.

    c. "'We' or 'Us' means Consumer Law Associates, LLC and its administrative staff at EFA Processing."

    d. "**In the event you are sued, for a small additional fee, we will assist you in preparing an answer to such suit and will negotiate with the creditor's attorney on your behalf. We will not go to court with you or file an appearance on your behalf, as the cost of doing so would be prohibitive. We will advise you on what the creditor can do, if anything, with a judgment and will work with you to revise your debt reduction plan if it's necessary to serve your interests**." Plaintiff's Exhibit 2, p. 6, ¶ 4 (emphasis original).

  17. In addition to the provisions set out above, the Client Retainer Package contains the following statements regarding fees:

    a. "**Fees.** As consideration for the services to be provided by CLA, Client agrees to pay all fees stated in this Agreement. Client acknowledges and understands that CLA is not being retained on an hourly basis, and that this means that CLA will not place any portion of the retainer in a trust account and will use said retainer at its sole discretion. Client also acknowledges and understands that all fees are nonrefundable and that since CLA is not being retained on an hourly basis and thus will not be recording or reporting the amount of time billable time to Client." Plaintiff's Exhibit 2, p. 7, ¶ 10.

    b. "**The following fees are due and payable by Client to CLA,** an initial Consultation Fee of $ 199.00. Client agrees to pay a Retainer Fee of 10%, totaling $ 2030.04 over the first 10 months that Client is enrolled with CLA. Finally, Client agrees to pay a monthly service fee of $ 85.00 per month for each month of enrollment. **Client agrees to have payments debited monthly as shown on the Electronic Funds Authorization Form attached to this Agreement.** CLA will begin negotiation of Client accounts when Client has funds available in their CLA Trust Account to fund anticipated settlements." Plaintiff's Exhibit 2, p. 7, ¶ 10 (emphasis original).

    c. "**Trust Account and Fees.** Client agrees to pay an File Closing Fee of $199.00 if Client terminates this agreement before the end of the plan term. Fees paid by Client under this agreement are deemed earned when paid." Plaintiff's Exhibit 2, p. 7, ¶ 11.

    d. "**Additional Administrative Fees and Costs.** You will pay a fee of $25 for any payment returned by your bank as unpaid. You will also pay a fee of $20 for any changes you request to your

debit date. Any costs incurred by the firm as a result of overnight delivery of checks or documents and copies shall also be paid by you. The fee for Overnight document delivery is $30." Plaintiff's Exhibit 2, p. 7, ¶ 13.

  e. "**Authorization for Additional Legal Fees.** As an active client of the Firm, if you decide you need additional legal services because your creditors have pursued litigation against you, you authorize the release of up to $65 from the funds you paid into escrow to pay additional legal services you may require. You understand that $65 will purchase a phone consultation and the 23. preparation of one document in response to a creditor suit. Fees can be higher based on the complexity of the situation and the timeline required to respond. You understand that this attorney will not represent you in litigation, but will assist you in preparing appropriate documents and for any possible appearance at trial. No attorney will be responsible for preparing an answer to any action against you unless you provide Consumer Law Associates, LLC with such documents at least 10 days." Plaintiff's Exhibit 2, p. 7, ¶ 14.

18. Over the term of the Hayses' relationships with Consumer Law Associates and EFA, they paid the following amounts to Consumer Law Associates and EFA:

| Approximate Date | Amount |
| --- | --- |
| November 19, 2009 | $402.00 |
| December 19, 2009 | $345.00 |
| January 19, 2010 | $600.00 |
| February 19, 2009 | $700.00 |
| March 19, 2010 | $345.00 |
| April 19, 2010 | $345.00 |
| May 19, 2010 | $600.00 |
| June 19, 2010 | $345.00 |
| July 19, 2010 | $345.00 |
| August 19, 2010 | $345.00 |
| September 19, 2010 | $345.00 |
| October 19, 2010 | $345.00 |
| November 19, 2010 | $345.00 |

| Approximate Date | Amount |
|---|---|
| December 19, 2010 . . . . . . . . . . . . . . . . . . . . . . . . . . | $345.00 |
| January 10, 2011 . . . . . . . . . . . . . . . . . . . . . . . . . . . | $600.00 |
| January 19, 2011 . . . . . . . . . . . . . . . . . . . . . . . . . . . | $345.00 |
| TOTAL | $6,697.00 |

These funds were electronically transferred out of Mr. & Mrs. Hays' checking account at Security State Bank, in Wellington, Sumner County, Kansas by EFA Processing.

19.   Mr. and Mrs. Hays received an e-mail from Consumer Law Associates on November 3, 2009, confirming their engagement of Consumer Law Associates. They made their last payment on January 19, 2011. Therefore, Mr. and Mrs. Hays' relationship with the defendants lasted no less than the 442 days that elapsed between those two dates.

20.   Defendant Neil J. Ruther is an attorney licensed in Maryland, and is a member of defendant Consumer Law Associates, owning 99.75% of that company. All of the actions taken by defendant Consumer Law Associates in connection with the plaintiffs herein are part of the intentional business of defendant Consumer Law Associates, and occurred with the approval defendant Ruther.

21.   No defendant is registered as a Credit Services Organization with the Office of the State Banking Commissioner.

22.   All of Mr. and Mrs. Hays' communications with any defendant or the agent of any defendant occurred while the plaintiffs were physically located in Sumner County, Kansas. During the pendency of their involvement with the defendants, the Hayses sent and received no fewer than 91 e-mails, 17 phone calls, and 31 faxes to and from the defendants.

## Count One:  Kansas Credit Services Organization Act
## and Kansas Consumer Protection Act

23. Paragraphs 1 through 22 are hereby incorporated by reference as though fully set out.

24. Mr. and Mrs. Hays are a "consumer" as that term is defined by K.S.A. 50-1117(b).

25. Mr. and Mrs. Hays are also a "consumer" as that term is defined by K.S.A. 50-624(b).

26. The defendants are each "suppliers" as that term is defined by K.S.A. 50-624(j).

27. The dealings between Mr. and Mrs. Hays and the defendants constitute "consumer transactions" as that term is defined by K.S.A. 50-624(c).

28. Defendants are each a "credit services organization" as that is defined by K.S.A. 50-1117(c), because each is "a person who engages in . . . the business of debt management services for a fee, compensation or gain."

29. Defendants are each in violation of the Kansas Credit Services Organization Act, because each is engaged in providing and holding themselves out as willing to provide credit services without being registered, in violation of K.S.A. 50-1118(a).

30. Defendants are each in violation of the Kansas Credit Services Organization Act, because each has advertised or caused to be advertised the services of a credit services organization to Kansas consumers without first obtaining proper registration from the Kansas Banking Commissioner in violation of K.S.A. 50-1121(f).

31. Defendants are each in violation of the Kansas Credit Services Organization Act, because the plaintiffs have been required to make a promise to pay in violation of K.S.A. 50-1121(k).

32.     Defendants are in violation of K.S.A. 50-626(a) by virtue of K.S.A. 50-1132 which provides that "Any violation of this act or any rule and regulation promulgated thereunder is a deceptive act or practice under the Kansas consumer protection act. Any remedy provided by this act shall be construed to be in addition to other remedy provided by the Kansas consumer protection act."

33.     The defendants' actions were ongoing, and therefore subject to a daily penalty pursuant to K.S.A. 50-636(d).

## Count Two:  Declaratory Judgment and Injunction

34.     Paragraphs 1 through 33 are hereby incorporated by reference as though fully set out.

35.     The plaintiff seeks a declaration that the defendants' acts violated the Kansas Credit Services Organization Act and the Kansas Consumer Protection Act pursuant to K.S.A. 50-634(a)(1), and an injunction against future violations pursuant to K.S.A. 50-634(a)(2).

36.     Because the defendants' written agreement with the plaintiff is a violation of Kansas criminal law by virtue of both K.S.A. 50-1131 and K.S.A. 21-4402, the contract is void and unenforceable, and the plaintiff seeks a declaration thereof.

## Count Three: Civil Conspiracy

37.     Paragraphs 1 through 36 are hereby incorporated by reference as though fully set out.

38.     The actions of the defendants complained of herein constitute a civil conspiracy.

## Demand for Judgment

THEREFORE, plaintiffs demand judgment against the defendants as follows:

39.   Against defendant Consumer Law Associates, LLC and defendant Neil J. Ruther, jointly and severally, reasonable penalties pursuant to K.S.A. 50-634(b), and K.S.A. 50-636(a) and (d) in an amount not to exceed $8,840,000.00.

40.   Against defendant EFA Processing, L.P., reasonable penalties pursuant to K.S.A. 50-634(b), and K.S.A. 50-636(a) and (d) in an amount not to exceed $8,840,000.00.

41.   Against defendant New Leaf Debt, LLC, reasonable penalties pursuant to K.S.A. 50-634(b), and K.S.A. 50-636(a) and (d) in an amount not to exceed $8,840,000.00.

42.   Against defendants Consumer Law Associates, LLC; Neil J. Ruther; EFA Processing, L.P.; and New Leaf Debt, LLC jointly and severally for:

   a.   Damages in an amount to be determined by the Court, but in no case less than $6,697.00 pursuant to K.S.A. 50-1133(a);

   b.   Punitive damages pursuant to K.S.A. 50-1133(b);

   c.   Declaratory judgment that the defendants' acts violated the Kansas Credit Services Organization Act and the Kansas Consumer Protection Act pursuant to K.S.A. 50-634(a)(1), and an injunction against future violations pursuant to K.S.A. 50-634(a)(2);

   d.   Declaratory judgment that the defendants' written agreement with the plaintiff is a violation of Kansas criminal law by virtue of both K.S.A. 50-1131 and K.S.A. 21-4402, and that the contract is therefore void and unenforceable.

   e.   Reasonable attorney fees pursuant to K.S.A. 50-1133(a) and K.S.A. 50-634(e); and

   f.   The costs of this action, together with such other relief as the Court may determine the plaintiffs to be entitled at law or in equity.

## Jury Demand

Plaintiff demands a trial by jury.

## Designation of Place of Trial

Plaintiff designates Wichita, Kansas, as the place of trial.

## Notice of Attorney Lien

Plaintiff and plaintiff's counsel hereby gives notice that plaintiff's counsel claims, pursuant to K.S.A. 7-108, an attorney lien on any and all proceeds due or paid to the plaintiff.

## Conclusion

Wherefore, the plaintiff requests that the Court grant the relief set out in this Complaint.

Respectfully submitted,

/s/ Martin J. Peck
Martin J. Peck, #16273
Security State Bank Building
107 E. Harvey, Second Floor
P.O. Box 421
Wellington, KS 67152
(620) 326-5997
Fax (620) 326-6887
peck@martinjpeck.com

United States District Court, District of Kansas
COMPLAINT
*Marc L. Hays and Jennifer L. Hays v. Consumer Law Associates, LLC,* et al.
Case No. 11-CV-____-___-___

## VERIFICATION

We, Marc L. Hays and Jennifer L. Hays, state that we caused the foregoing Complaint to be prepared and have read the same. With respect to the factual assertions contained in paragraphs 1, 12 through 19, and 22, every word, thing, and statement contained in those paragraphs is true based upon my our personal knowledge.

/s/ Marc Hays
Marc L. Hays

/s/ Jennifer L. Hays
Jennifer L. Hays