IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

MARK L. HAYS and
JENNIFER L. HAYS,

                    *Plaintiffs*,

v.

CONSUMER LAW ASSOCIATES, LLC,
NEIL J. RUTHER, NEW LEAF DEBT,
LLC, and EFA PROCESSING, LP,

                    *Defendants*.

Case No.  11-CV-01163-JTM-DJW

## MOTION TO CERTIFY QUESTIONS
## TO THE KANSAS SUPREME COURT

Pursuant to K.S.A. § 60-3201 (2005), defendants move the court to certify the

following questions to the Kansas Supreme Court:

### QUESTIONS PRESENTED

I.      If an attorney licensed to practice law in Kansas and acting within the course and scope of the attorney's practice is exempt from the provisions of the Kansas Credit Services Organization Act, is the attorney's law firm also exempt?  Specifically, does the definition of "person" in K.S.A. § 50-1117 (2005) apply to the attorney exemption at K.S.A. § 50-1116(b) (2005)?

II.     Does applying the Kansas Consumer Protection Act or the Kansas Credit Services Organization Act to attorneys, law firms, and their administrative agents in the context of attorney-client relationships violate the separation of powers mandated by Article 3, Section 1, of the Kansas Constitution?

Memorandum

### A.  Background

**The principal claims and defenses in this civil action center on the Kansas Credit Services Organization Act.** Plaintiffs filed their complaint on June 14, 2011.  Discovery concluded on March 9, 2012.  The Pretrial Order was entered on April 5, 2012.  Plaintiffs allege the defendants violated the Kansas Credit Services Organizations Act ("the KCSOA") and the Kansas Consumer Protection Act ("the KCPA"), and they engaged in a civil conspiracy. The plaintiffs seek a declaratory judgment that the client engagement contract between them and Consumer Law Associates, LLC ("CLA"), is void, an injunction to prevent defendants from further violating the KCSOA and the KCPA, damages, and civil penalties.  Plaintiffs' case is fundamentally premised on the allegation that defendants failed to comply with the requirements of the KCSOA.

CLA's defense to plaintiffs' claims is that CLA is exempt from the KCSOA's requirements because it is a law firm and it represented plaintiffs through one of the firm's licensed Kansas attorneys who acted within the scope of her practice.   The KCSOA expressly exempts attorneys:

> Any person licensed to practice law in this state acting within the course and scope of such person's practice as an attorney shall be exempt from the provisions of this act.

K.S.A. § 50-1116(b) (2005).  "Person" is defined in the KCSOA:

> "Person" means any individual, corporation, partnership, association, unincorporated organization or other form of entity, however organized, including a nonprofit entity.

K.S.A. § 50-1116(f) (2005).

CLA's alternative defense is that if the attorney exemption in the KCSOA is interpreted to exclude law firms from its protection, then applying the KCSOA to law firms, in the context of attorney-client relationships, violates the separation of powers doctrine mandated by Article 3, Section 1, of the Kansas Constitution because only the Kansas Supreme Court can regulate the practice of law.

Defendant Neil Ruther is an attorney licensed in Maryland. He is the principal owner of CLA. His liability is premised on his ownership of CLA. He asserts the same defenses as CLA. Defendant EFA Processing, LP ("EFA"), contends that it is also exempt because its involvement with plaintiffs was exclusively related to providing administrative support staff for CLA. Finally, defendant New Leaf Debt, LLC ("New Leaf"), claims that it was a referral source only and, therefore, was not required to comply with the Act.

## B.  Arguments and Authorities

**The Questions Presented should be certified to the Kansas Supreme Court because certification will conserve the time, energy, and resources of the parties as well as of this court and because the Questions Presented are novel and Kansas law is unsettled.**

### 1.  *The standard for certification.*

K.S.A. § 60-3201 (2005) authorizes the Kansas Supreme Court to "answer questions of law certified to it by . . . a United States district court . . . when requested by the

certifying court if there are involved in any proceeding before it questions of law of this state which may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent in the decisions of the supreme court and the court of appeals of this state."

The Tenth Circuit Court of Appeals has emphasized that certification should be used as a tool to save time, energy, and resources, and help build a cooperative judicial federalism. To this end, the Court should consider "whether certification will conserve the time, energy, and resources of the parties as well as of the court itself." *Boyd Rosene & Assocs. v. Kan. Mun. Gas*, 178 F.3d 1363, 1365 (10th Cir. 1999).  Certification is particularly appropriate if the question to be certified is novel and the state law unsettled. *Allstate Ins. Co. v. Brown*, 920 F.2d 664, 667 (10th Cir. 1990); *Lehman Bros. v. Schein*, 416 U.S. 386, 391 (1974) ("When federal judges in New York attempt to predict uncertain Florida law, they act, as we have referred to ourselves on this Court in matters of state law, as "outsiders" lacking the common exposure to local law which comes from sitting in the jurisdiction."); *Doe v. Unified School District,* 255 F. Supp. 2d 1251 (D. Kan. 2003) ("In the end, the answers to these questions involve substantial public policy choices. Important considerations of federalism counsel  that a state court, rather than a federal court, make those choices.").

**2.  *Certification will save time, energy, and resources of the court and the parties.***

The Same KCSOA Issues presented by this action will also control the outcome of a number of pending bankruptcy adversary actions that eventually will also come before

this court. This is the first of nine actions that will come before this court presenting the same issues of law.  The following eight adversary cases are pending in the United States Bankruptcy Court for the District of Kansas, each of which raises the same KCSOA issues that are present in this civil action:

*In re Steven Carl Lewis and Kimberly Lynne Lewis*, Bankruptcy Case No. 10-10117; *Linda S. Parks, Trustee, v. Consumer Law Associates, LLC, et al.*, Adv. Pro. No. 10-05098;

*In re Megan Diane Ballway*, Bankruptcy Case No. 10-13945; *Linda S. Parks, Trustee, v. Persels & Associates, LLC, et al.*, Adv. Pro. No. 11-05016;

*In re Levi A. Kinderknecht*, Bankruptcy Case No. 09-13443; *Linda S. Parks, Trustee, v. Persels & Associates, LLC, et al.*, Adv. Pro. No. 10-05209;

*In re Dana Lee Stahl*, Bankruptcy Case No. 10-10679; *Linda S. Parks, Trustee, v. Consumer Law Associates, LLC*, Adv. Pro. No. 10-05200;

*In re Mark Allan Good*, Bankruptcy Case No. 10-13160; *J. Michael Morris, Trustee, v. Persels & Associates, LLC*, Adv. Pro. No. 12-05052;

*In re Eric and Melody Kauffman*, Bankruptcy Case No. 10-11038; *J. Michael Morris, Trustee, v. Persels & Associates, LLC*, Adv. Pro. No. 12-05053;

*In re Nicole R. Reints*, Bankruptcy Case No. 10-12553; *J. Michael Morris, Trustee, v. Persels & Associates, LLC*, Adv. Pro. No. 12-05054; and

*In re Kenny A. And Karin D. Pedigo*, Bankruptcy Case No. 11-12916; *J. Michael Morris, Trustee, v. Persels & Associates, LLC*, Adv. Pro. No. 12-05055.

There is a substantial probability that each of these adversary cases will be decided in the district court.  In each of these cases, the defendants have demanded a jury trial, the claims involve private rights under *Stern v. Marshall*, ___ U.S. ___, 131 S.Ct. 2594, 2614, 180 L.Ed.2d 475, 499-500 (2011), and the defendants have filed motions to remove reference from the bankruptcy court to the district court.  If the absence of a definitive ruling by the Kansas Supreme Court on the Questions Presented, this court in all these cases will need to predict how the Kansas Supreme Court would rule.  On the other hand, if the Kansas Supreme Court on a certification from this Court interprets Kansas law as the defendants suggest, the substantive legal issues in each of these cases would be effectively resolved.[1]

**3.  *The Questions Presented are novel and Kansas law remains unsettled despite obiter dictum in a very recent decision of a panel of the Kansas Court of Appeals.***

The only Kansas appellate decision having any bearing on the Questions Presented is the very recent opinion of a panel of the Kansas Court of Appeals in *Consumer Law Associates, LLC, v. Stork*, No. 106,115 (Mar. 23, 2012).[2]  In a two sentence *obiter dictum* the

---

[1]  With respect to all defendants but New Leaf, interpretation of the scope of the KCSOA's attorney exemption and the constitutionality of applying the Act to law firms is determinative of the liability issue.

[2]  A photocopy of the *Stork* slip opinion is attached to this motion.

panel comments on the KCSOA's attorney exemption that is at the heart of this civil action and the pending bankruptcy adversary cases.

The plaintiffs in the *Stork* case are CLA, Persels & Associates LLC ("P&A"), a firm also owned by Neil Ruther, and three licensed Kansas attorneys employed by CLA and P&A.  Plaintiffs sued for declaratory judgment and a writ of mandamus, arguing that the Office of the State Bank Commissioner ("the OSBC") does not have statutory or consti-tutional authority to regulate attorneys or law firms.  The district court dismissed the case, holding that plaintiffs had failed to exhaust administrative remedies.  The court of appeals affirmed the district court.

In the opinion, the panel of the court of appeals held that the OSBC must make the initial determination of the meaning of the KCSOA's attorney exemption and its applica-tion to plaintiffs.  Because the OSBC was not given that opportunity, plaintiffs failed to exhaust their administrative remedies.  Even though that ruling disposed of the appeal, the panel inserted a two-sentence paragraph in the opinion interpreting the attorney exemp-tion:

> We agree with the district court that individuals who are licensed to practice law in Kansas are exempt from regulation by the OSBC. The OSBC exemption does not apply to a limited liability company or any other entity that is not licensed to practice law by the Kansas Supreme Court. See K.S.A. 50-1116(b).

*Stork*, slip op. at 8.

Plaintiffs in the *Stork* case have filed a motion for rehearing and for modification of the opinion. They also intend to petition the Kansas Supreme Court for review. The effect of these filings is to stay the appellate mandate, making the appellate opinion non-final. *See* Kansas Supreme Court Rules 7.05(a) and 8.03(I).

Even if the Kansas Court of Appeals denies the motions for rehearing and modification in *Stork*, and the Kansas Supreme Court denies the petition for review, *i.e.* the opinion becomes final, a Kansas intermediate appellate decision is not binding on this court. Judge Lungstrum has explained:

> In resolving this issue, it is well settled that this court must attempt to ascertain and apply state law, *Wade v. Emcasco Ins. Co.*, 483 F.3d 657, 665 (10th Cir. 2007), which in this case is the law of Kansas. The court must look to rulings of the state's highest court and, where no controlling state decision exists, the court must endeavor to predict how the state's highest court would rule. *Id.* The court should consider analogous decisions by the state supreme court, decisions of lower courts in the state, decisions of federal and other state courts, and the general weight and trend of authority. *MidAmerica Constr. Mgmt., Inc. v. MasTec N. Am., Inc.*, 436 F.3d 1257, 1262 (10th Cir. 2006). . . . Ultimately, of course, the court's task is to predict what decision the Kansas Supreme Court would make if faced with the same facts and issue. *Oliveros v. Mitchell*, 449 F.3d 1091, 1093 (10th Cir. 2006).

*First State Bank v. Daniel & Assocs., P.C.*, 519 F. Supp. 2d 1157, 1160-1161 (D. Kan. 2007). Thus, if the *Stork* decision becomes final, this court may consider *Stork* as a decision of a lower court in the state, but nevertheless must predict how the Kansas Supreme Court, not the court of appeals, would decide the Questions Presented.

Frankly, the two sentences in *Stork* commenting on the KCSOA's attorney exemption have little persuasive value. The court of appeal's *dictum* actually contradicts its

substantive ruling, which was that plaintiffs had not exhausted their administrative remedies because the OSBC should have the first opportunity to interpret its own regulation incorporating verbatim the KCSOA's attorney exemption provision. The *Stork dictum* is not supported by any analysis or by any authority and is certainly not binding on any Kansas court. Finally, it is nonsensical when applied to the reality that lawyers practice law as members of law firms.

The *Stork* panel of the court of appeals held that the commissioner must make the initial determination of the meaning of the attorney exemption and its application to the plaintiffs. Because the OSBC was not given that opportunity, the plaintiffs failed to exhaust their administrative remedies. Yet the panel of the court of appeals inserted a two sentence paragraph in the opinion interpreting the attorney exemption. If plaintiffs acted too soon by asking for a statutory interpretation of the attorney exemption, why did the panel put *dictum* into its opinion interpreting the exemption?

Nowhere in the *Stork* opinion is there any analysis or authority supporting the panel's gratuitous interpretation of the KCSOA's attorney exemption. Furthermore, no Kansas court or administrative agency is bound by the *Stork* panel's *dictum*:

> Dictum often develops in opinions from comments upon arguments advanced by counsel for the respective parties. Dicta and obiter dicta which go beyond the case may be respected but should not control a judgment in a subsequent case when the precise point is presented, argued and considered by the entire court. (*See Express Co. v. Foley*, 46 Kan. 457, at 464, 26 Pac. 665.) Nobody is bound by dictum (*State v. Mercantile Co.*, 103 Kan. 896, 176 Pac. 670), "not even . . . the court itself when it may be further enlightened by briefs and arguments of counsel and mature consideration

> and when it becomes a question squarely presented for decision." ( *Putnam v. City of Salina*, 137 Kan. 731, at 733, 22 P. 2d 957). *See, also, Burke v. State Board of Canvassers*, 152 Kan. 826, at 836, 107 P. 2d 773.

*Medford v. Board of Trustees*,162 Kan. 169, 173, 175 P.2d 951 (1946).

If followed, the *Stork* panel's *dictum* would fundamentally change the legal character of law firms in Kansas and lead to nonsensical results. Most Kansas law firms that assist debtors or assist injured persons will need to register and comply with the KCSOA if the Stork panel's dictum is a correct interpretation of the KCSOA's attorney exemption. Allowing the OSBC to regulate law firms eviscerates the attorney exemption and amounts to regulating the practice of law.

No law firm could engage in or hold itself out as willing to engage in debt management service with a resident of Kansas without first obtaining registration from the OSBC. K.S.A. § 50-1118(a) (2005). That means that a law firm could not charge a fee, without registering with the bank commissioner, if it would offer the following services that are now commonly provided by many law firms: (a) receive or offer to receive funds from a consumer for the purpose of distributing funds among the consumer's creditors in full or partial payment of the consumer's debts; (b) improve or offer to improve a consumer's credit record, history or rating; or (c) negotiate or offer to negotiate to defer or reduce a consumer's obligations with respect to credit extended by others. *See* definitions of "Credit Services Organization," K.S.A. § 50-1117(c) (2005) and "Debt Management Service," K.S.A. § 50-1117(d) (2005). These are common practices of attorneys who

represent debtors and injured persons, including bankruptcy attorneys and trial attorneys. For example, in *Parks v. Consumer Law Associates, LLC,* Adv. No. 10-05098, (Bankr. D. Kan.) the trustee's expert witness, David Eron, a Wichita lawyer, gave the following deposition testimony about the number of instances when he engaged in "debt management service" as defined by the KCSOA:

> I have -- since I received your request to bring files, I did go through and try to do a bit better analysis of what those were. I came up with -- in my current law practice I came up with 22 examples of, in some way, shape or form, trying to do debt settlement, at least -- it's hard to put a fine point on exactly what that means, so I'll just kind of tell you what I did to get that number. I excluded things that were just strictly lawsuits where we're settling lawsuits, and -- but I did include things where it was -- where the debt being settled might be only a single debt to where the client came and said, hey, you know, I've got X debts, this one has a particular problem for me and I want to settle that one or I want to figure out how to deal with that one. It also includes things that are not consumer related. So that 22 is going to include some cases that are consumer credit, some cases that are business debts, some cases that are mortgage attempts to work out mortgage, some cases that are going to be tax work outs, and it includes one student loan work out.

Mr. Eron then clarified that he would classify 13 of the 22 cases as consumer debts. In those 13 cases, he had charged a fee to the client and the fee has been paid to his law firm, Eron Law Office, PA. When asked about registration under the Act, he indicated that neither he nor his law firm were registered:

> Q: Have you registered yourself under the Kansas Credit Services Organization Act?
> A. No.
> Q. Has your firm registered under the Kansas Credit Services Act?
> A. No.
> Q. Why not?

A.      Because we are attorneys.

There are other practices that would trigger the registration requirements.  Lawyers and law firms sometimes deposit money into their trust account to pay the debtor's taxes that cannot be discharged in bankruptcy.  They do the same in anticipation of purchasing exempt assets.  Clients' settlement funds are held in law firms' trust accounts after personal injury settlements are made and the firms' attorneys negotiate reduced payments of liens or debts owed to medical providers.  Funds are deposited in trust accounts to avoid creditors seizing them while bankruptcy estate planning is done in anticipation of bankruptcy.  Funds from the sale of non-exempt assets are deposited into trust to pay nondischargeable debts or apply it on debt secured by exempt assets.  These practices would all trigger the KCSOA's registration requirements.  The practices are also prohibited by the KCSOA, as explained in more detail below.

In order to register, a law firm would have to provide the OSBC "any other informa-tion the commissioner may deem necessary to evaluate the financial responsibility and con-dition, character, qualifications and fitness of the applicant."  K.S.A. § 50-1118(a)(5) (2005).  What standards are to be used to determine if a law firm meets these qualifications?  There are no rules or regulations related to the KCSOA, much less its application to law firms.  Does a newly admitted lawyer who forms a limited liability company, but does not have an impressive balance sheet, meet the financial qualifications?  Does a law firm that represents criminal defendants satisfy the "character" qualifications?  And what "qualifi-

cations" are to be imposed on law firms in order to obtain the OSBC's *imprimatur* when the firms' members are already licensed to practice law in Kansas?

In order to meet the OSBC's registration requirements, a law firm required to be registered under the KCSOA could no longer do the following things, all of which are commonly done now by law firms in Kansas:

(a) A law firm could not delay payment for the purpose of increasing interest, costs, fees, or charges payable by the consumer. K.S.A. § 50-1121(a) (2005). Under this provision, a law firm could not advise a client to stop paying high interest credit cards and begin saving money to buy a car for cash that would be exempt under K.S.A. § 60-2304(c) (2005), a common practice among law firms that assist consumer debtors.

(b) A law firm could not operate as a collection agency. K.S.A. § 50-1121(j) (Supp. 2005). Does this mean that a law firm that helps consumer debtors could not also have a practice where it tries to collect debts for its other clients?

(c) A law firm could not receive or charge any fee in the form of a promissory note or other promise to pay. K.S.A. § 50-1121(k) (2005). Would a law firm that charged its client on an hourly basis have to stop representing its client the moment the client did not pay the firm pursuant to their contract, but promised to pay as soon as she could?

(d) A law firm could not accept or receive any reward, bonus, premium, commission or any other consideration for the referral of a consumer to any person or related entity. K.S.A. § 50-1121(l) (2005). A law firm would be prohibited from referring a client who was

injured in an accident to a law firm that handles those types of cases and receiving a referral fee that would otherwise be proper under the Kansas Rules of Professional Conduct. *See* Kan. Sup. Ct. Rule 226, KRPC Rule 1.5(g)

(e) A law firm could not lend money or provide credit to a consumer.  K.S.A. § 50-1122(n) (2005).  In short, a law firm could not advance costs for its client.

(f) A law firm could not structure a debt management services agreement in any manner that would result in a negative amortization of any of the consumer debts.  K.S.A. § 50-1121(p) (2005). That means prioritizing debts nondischargeable in bankruptcy over those that can be discharged would be illegal.

(g) A law firm could not build up funds over time in its trust account to pay priority or nondischargeable debts.  K.S.A. § 50-1122(b)(2) (2005).

(h) A law firm would be limited in the amount of fees it could charge even though the fees would otherwise comport with the Kansas Rules of Professional Responsibility. A personal injury law firm's contingent fee would be limited to the amount allowed by statute if a lawyer in the firm agreed to negotiate reduced payments to his client's medical providers, a practice nearly universal among the plaintiffs' bar.  Fees would be limited to a one-time consultation fee not exceeding $50 and any credit report obtained would have to be paid from that fee.  An additional fee of $20 per month or $5 per month per creditor could also be charged.  K.S.A. § 50-1126 (2005).  What law firms could afford to stay in business at these rates?  How will Kansas consumers benefit from having limited choices

available for assistance in debt counseling or recovery of damages if they are negligently or intentionally injured when law firms that currently offer these services abandon those practice areas?

(i)  A law firm would have to obtain a surety bond.  K.S.A. § 50-1119 (2005).

(j)  A law firm would have to provide a credit education program.  K.S.A. § 50-1120 (2005).

(k)  A law firm would be required to disclose that it may receive compensation from the consumer's creditors.  K.S.A. § 50-1120(c)(7) (2005).  How can a firm receive compensation from an adverse party?

(l)  A law firm would be required to disclose that it may not solicit other services from its client.  K.S.A. § 50-1120(c)(8) (2005).  Is the firm prohibited from providing other legal services to its clients while it is providing credit services? A law firm could not write a will for a person for whom it is also negotiating a credit card debt.

(m)  A law firm would be prohibited from advertising prior to registration. K.S.A. § 50-1121(f) (2005). That means a lawyer, individually, can advertise but a law firm cannot.

(n)  A law firm would be prohibited from taking a security interest.  K.S.A. § 50-1121(o) (2005). A firm cannot assert an attorney lien, but an individual lawyer can.  If money is collected on that lien, can the lawyer share it with the law firm's partners?

(o)  A law firm may no longer "[u]se any communication which simulates in any manner *a legal or judicial process*, or which gives the false appearance of being authorized,

issued or approved by a government, governmental agency *or attorney-at-law*." K.S.A. § 50-1121(s) (Supp. 2005).

If a law firm failed to abide by these rules, it would be subject to *criminal penalties, actual damages, punitive damages and attorney fees.* K.S.A. § 50-1131 (2005).

### C.  Plaintiffs' Position on Certification

Plaintiffs' counsel has indicated that the plaintiffs do not object to certification; believe that a ruling from the Kansas Supreme Court regarding the scope and application of the attorney exemption would be helpful; and would appreciate the opportunity to frame the issue and facts regarding certification in proceedings before the Kansas Supreme Court.

### D.  Conclusion

It makes little sense to press forward with dispositive motions, trial, and potential appeals in this civil case while  trying to predict what the Kansas Supreme Court would or might do, particularly when it seems inevitable that the Kansas Supreme Court will rule on the issue in the relatively near future.  The *Stork* plaintiffs' appeal to the Kansas Supreme Court is being framed both as an appeal taken as a matter of right and as a discretionary appeal.  If the supreme court declines to take the appeal, or affirms exclusively on the failure to exhaust administrative remedies (without commenting on proper interpretation of the KCSOA's attorney exemption), it is likely that the Kansas Supreme Court will review the issue on appeal after a final agency action in *Stork*.

Getting a ruling from the Kansas Supreme Court sooner rather than later, and staying briefing on dispositive motions and other pretrial work in the meantime, both in this action and in the eight other pending bankruptcy adversary cases that involve the same issues, will conserve the time, energy, and resources of the parties as well as of this court.  The alternative, to press forward with dispositive motions, trials, and potential appeals without any clear framework from the Kansas Supreme Court is not in the best interests of anyone.

Pursuant to K.S.A. § 60-3201 (2005), this court should certify the Questions Presented to the Kansas Supreme Court for a decision on the statutory interpretation and constitu-tionality of the KCSOA's attorney exemption.

Respectfully submitted,

REDMOND & NAZAR, LLP
*Counsel for Consumer Law Associates LLC*

By:    s/ W. Thomas Gilman
        W. Thomas Gilman #11867
        245 N. Waco, Suite 402
        Wichita, Kansas 67202
        Tel: (316) 262 8361
        Fax: (316) 263-0610
        Email: wtgilman@redmondnazar.com

JOSEPH & HOLLANDER LLC
*Counsel for Neil J. Ruther*

By:    s/ Christopher M. Joseph
        Christopher M. Joseph #19778
        Stephen M. Joseph #7452
        1508 S.W. Topeka Blvd.

Topeka, Kansas 66612
Tel: (785) 234-3272
Fax: (785) 234-3610
Email: cjoseph@josephhollander.com

MORRIS, LAING, EVANS, BROCK
& KENNEDY, CHTD.
*Counsel for New Leaf Debt, LLC*

By:     /s/ Ryan M. Peck
        Ryan M. Peck #21223
        300 N. Mead, Suite 200
        Wichita, KS 67202
        Tel: (316) 262-2671
        Fax: (316) 383-6553
        Email: rpeck@morrislaing.com

MOORE MARTIN, LC
*Counsel for EFA Processing, LP*

By:     /s/ Coy M. Martin
        Coy M. Martin #17104
        622 E. Douglas
        Wichita, KS 67202-3504
        Tel: (316) 267-6000
        Fax: (316) 267-6001
        Email: coy@mooremartin.com

## Certificate of Service

I hereby certify that on April 13, 2012, I electronically filed the foregoing with the

clerk of the court by using the CM/ECF system which will send notice of electronic filing

to all counsel of record.

/s/ Christopher M. Joseph
Christopher M. Joseph

No. 106,115

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

CONSUMER LAW ASSOCIATES, LLC; PERSELS & ASSOCIATES, LLC;
DAVID E. HERRON, II; STANLEY GOODWIN; and LAURA SIMPSON-REDMOND,
*Appellants*,

v.

THE HONORABLE JUDI STORK, ACTING COMMISSIONER OF THE OFFICE OF
KANSAS STATE BANK COMMISSIONER,
*Appellee*.

SYLLABUS BY THE COURT

1.

Whether a party is required to, or has failed to, exhaust its administrative remedies is a question of law over which an appellate court's review is unlimited.

2.

The Kansas Judicial Review Act is the exclusive remedy for review of agency actions unless the Act specifically exempts the agency from its authority. The Kansas Judicial Review Act does not exempt the Office of Kansas State Bank Commissioner.

3.

The Kansas Legislature charged the Office of Kansas State Bank Commissioner with the statutory duty to regulate any credit service organization or debt management service doing business in Kansas and to determine whether any person has violated or is about to violate the Kansas Credit Services Organization Act.

4.

      The Office of Kansas State Bank Commissioner has the authority to conduct hearings, to issue cease and desist orders, and to impose fines up to $10,000 per violation of the Kansas Credit Services Organization Act.

5.

      The Kansas Credit Services Organization Act does not apply to any person licensed to practice law in Kansas when the person is acting within the course and scope of such person's practice as an attorney. K.S.A. 50-1116(b).

6.

      Whether a person has violated, or is about to violate, the Kansas Credit Services Organization Act necessarily requires the interpretation of statutes and the consideration of evidence.

7.

      Whether a person, as defined by K.S.A. 50-1117(f), is exempt from the Kansas Credit Services Organization Act requires statutory interpretation.

8.

      Individuals who are licensed to practice law in Kansas are exempt from regulation by the Office of Kansas State Bank Commissioner. The statutory exemption under K.S.A. 50-1116(b) does not apply to a limited liability company or any other entity that is not licensed to practice law by the Kansas Supreme Court.

9.

      Before a declaratory judgment action may be brought in district court claiming an exemption under the Kansas Credit Services Organization Act, the procedural rules in the

Kansas Administrative Procedures Act and the Kansas Judicial Review Act must be followed and exhaustion of administrative remedies is required.

Appeal from Shawnee District Court; DAVID E. BRUNS, judge. Opinion filed March 23, 2012. Affirmed.

*Jeffrey A. Befort*, of Stinson Morrison Hecker LLP, of Kansas City, Missouri, and *Charles W. Hatfield*, of the same firm, of Jefferson City, Missouri, for appellants.

*Derenda J. Mitchell*, assistant attorney general, for appellee.

Before GREENE, C.J., PIERRON and MARQUARDT, JJ.

MARQUARDT, J.: Consumer Law Associates, LLC; Persels & Associates, LLC; David E. Herron, II; Stanley Goodwin; and Laura Simpson-Redmond (Petitioners) appeal the district court's dismissal of their declaratory judgment action and writ of mandamus petition for failing to exhaust administrative remedies. We affirm the dismissal.

In July 2009, the Office of the Kansas State Bank Commissioner (OSBC) contacted Consumer Law Associates, LLC (CLA), and Persels & Associates, LLC (Persels), national law firms which are located in Maryland, because OSBC had received several complaints from their Kansas customers. Following an investigation, the OSBC believed that CLA and Persels were possibly engaged in unregistered credit and debt management services that violated the Kansas Credit Services Organization Act (KCSOA), K.S.A. 50-1116 *et seq*., and notified CLA and Persels of the possible violations.

Before the OSBC had an opportunity to hold a hearing on the possible violations or to send a cease and desist order under K.S.A. 50-1129, CLA, Persels, and three of their field attorneys in Kansas, David E. Herron, II, Stanley Goodwin, and Laura Simpson-

Redmond (Petitioners), filed a verified petition for a declaratory judgment action (petition) with the Shawnee County District Court. The Petitioners alleged they were exempt from the OSBC's regulation, which states: "Any person licensed to practice law in this state acting within the course and scope of such person's practice as an attorney shall be exempt from the provisions of this act." K.S.A. 50-1116(b). The field attorneys work for CLA and Persels, and the clients they serve are CLA's and Persel's clients.

The Petitioners claimed that they were not required to exhaust administrative remedies because (1) the OSBC did not have the authority to regulate attorneys, (2) the only issues were questions of law, (3) the Kansas Supreme Court alone regulates attorneys and law firms, and (4) any administrative remedy was inadequate or would result in irreparable harm. Finally, the Petitioners argued the district court should bar the OSBC from bringing an administrative action against them because it lacked subject matter jurisdiction.

The same day the Petitioners filed their petition, they also filed a motion for a writ of mandamus and temporary injunction (motion) to bar the OSBC from initiating administrative proceedings and from issuing a cease and desist order. The Petitioners alleged they would suffer irreparable harm if the OSBC prevented them from rendering legal services or advice to their more than 1,000 Kansas clients.

The district court held a status conference on September 16, 2010, but apparently refused to issue a writ of mandamus or a temporary restraining order. Instead, the district court instructed the OSBC to file its response to Petitioners' declaratory judgment action. Later that day, the OSBC issued a summary order to cease and desist and pay a fine under the Kansas Administrative Procedure Act (KAPA), K.S.A. 77-501 *et seq.*, and K.S.A. 50-1129. The order required CLA, Persels, and their owners, officers, partners, and directors to immediately cease and desist from engaging in any "credit services organization business, as defined by K.S.A. 50-1117(c), in the State of Kansas and with Kansas

4

residents." The order directed CLA and Persels to pay a fine of $8,400,000 based on 1,671 violations of K.S.A. 50-1118(a), and at least one violation of K.S.A. 50-1121(a), (b), (d), (f), and (p). The order stated that CLA and Persels could request a hearing under K.S.A. 77-542 to challenge the order. It is undisputed that this order was directed at CLA, Persels, and their owners, partners, officers, and directors, along with Neil J. Ruther and Lisa L. Perillo; furthermore, it did not name or restrict Herron, Goodwin, or Simpson-Redmond.

On September 24, 2010, the OSBC filed a response to Petitioners' declaratory judgment petition and indicated its intention to file a motion to dismiss. In its response, the OSBC argued that administrative procedures were available to CLA and Persels and the administrative procedures were adequate to resolve the issues CLA and Persels raised in their petition.

The OSBC filed a motion to dismiss on October 14, 2010, claiming that Petitioners lacked an actual case or controversy because they filed their petition for declaratory judgment before the OSBC filed its cease and desist order. Further, the OSBC alleged the district court lacked subject matter jurisdiction over the declaratory judgment petition because the Petitioners failed to exhaust administrative remedies or establish that an administrative remedy would be inadequate.

On April 22, 2011, the district court filed a memorandum decision and order concluding that the exemption in K.S.A. 50-1116(b) only applies to "those who are 'licensed to practice law' in the State of Kansas and who are 'acting within the course and scope' of their practice." After analyzing several Kansas Supreme Court Rules, the district court determined that a limited liability company cannot possibly be "'licensed to practice law'" in Kansas because

"a limited liability company cannot obtain an undergraduate or law school degree, cannot pass a written bar examination and cannot meet the other requirements mandated by the Kansas Supreme Court to obtain a license to practice law in this state. Accordingly, the Court concludes that the right to practice law may only be granted to natural persons and cannot be granted to artificial legal entities such as a corporation or a limited liability company."

In reaching its conclusion, the district court followed the rationale of the case of *Lexington Law Firm v. S.C. Dept. of Cons. Aff.*, 382 S.C. 580, 677 S.E. 2d 591 (2009). In *Lexington*, the South Carolina Department of Consumer Affairs (Department) learned that a Utah-based law firm, Lexington Law Firm (Lexington), was providing credit counseling services to South Carolina citizens. The Department advised Lexington that the South Carolina Consumer Credit Counseling Act (Act) required credit counseling organizations to obtain a license. Lexington agreed but argued that the attorney exemption within the Act exempted it from the Department's regulation.

Lexington filed a declaratory judgment action before the Department could initiate administrative proceedings and sought a decision that the Act's attorney exemption applied to Lexington. The *Lexington* court determined the Department was in the best position to implement its statutory charge of issuing licenses and the initial determination of whether a business qualifies for a statutory exemption. 382 S.C. at 586.

Utilizing the reasoning in *Lexington*, the district court here determined that CLA and Persels could not, as a matter of law, be licensed to practice law in Kansas and, therefore, they were not entitled to the exemption under K.S.A. 50-1116(b). Finally, the district court concluded that the Kansas Legislature specifically charged the OSBC, through the KCSOA, with the authority to regulate credit service organizations in Kansas, including the authority to make an initial determination, subject to judicial review, whether a person violated the KCSOA or whether a person was entitled to an exemption.

Because the OSBC had the authority to make that initial determination, the district court held that CLA and Persels failed to exhaust their administrative remedies and dismissed the declaratory judgment petition. The Petitioners filed a timely appeal.

The Petitioners filed a motion to stay administrative proceedings. The motion was granted on October 13, 2011, by the Office of Administrative Hearings.

On appeal, the threshold issue is whether the district court erred in finding that the Petitioners were required to exhaust administrative remedies before proceeding with their Chapter 60 declaratory judgment action. Whether a party is required to, or has failed to, exhaust its administrative remedies is a question of law over which an appellate court's review is unlimited. *Miller v. Kansas Dept. of S.R.S.*, 275 Kan. 349, 353, 64 P.3d 395 (2003).

The Kansas Judicial Review Act (KJRA), K.S.A. 77-601 *et seq.*, is the exclusive remedy for review of agency actions unless the KJRA specifically exempts the agency from its purview. See K.S.A. 2011 Supp. 77-603(a); K.S.A. 77-606. The KJRA does not exempt the OSBC. K.S.A. 2011 Supp. 77-603(c). Further, the KJRA has consistently been recognized as the *exclusive* means of review of an agency action. See, *e.g.*, *Friedman v. Kansas State Bd. of Healing Arts*, 287 Kan. 749, 755, 199 P.3d 781 (2009).

The Kansas Legislature charged the OSBC with the statutory duty to regulate any "credit service organization" or "debt management service" doing business in Kansas and to determine whether any person has violated or is about to violate the KCSOA. K.S.A. 50-1117(a), (c), (d); K.S.A. 50-1128(b)(3). The OSBC's authority also includes the power to conduct hearings, to issue cease and desist orders, and to impose fines up to $10,000 per violation of the KCSOA. K.S.A. 50-1129(a). However, the KCSOA does not apply to "[a]ny person licensed to practice law in this state acting within the course and scope of such person's practice as an attorney." K.S.A. 50-1116(b).

Whether a person has violated, or is about to violate, the KCSOA necessarily requires the interpretation of statutes and the consideration of evidence. See *Dean v. State*, 250 Kan. 417, 422, 826 P.2d 1372, *cert. denied* 504 U.S. 973 (1992) (an agency's interpretation of a statute was a necessary administrative act in implementing the statute, even though a court could later construe the statute differently); *Farmers Banshares of Abilene, Inc. v. Graves*, 250 Kan. 520, Syl. ¶ 1, 826 P.2d 1363 (1992) ("Interpretation of a statute is a necessary and inherent function of an agency in its administration or application of that statute."). Additionally, whether a "person," as defined by K.S.A. 50-1117(f), is exempt from the KCSOA also requires the interpretation of statute.

Here, the OSBC placed CLA and Persels on notice that they *might* be violating the KCSOA. Without first exhausting administrative remedies that could have granted relief on some ground before going to court, the Petitioners filed a petition for declaratory judgment in the district court. In the petition, the Petitioners did not attack the exemption itself; instead, they claimed the OSBC's interpretation of the exemption statute violated the separation of powers doctrine and infringed on the Kansas Supreme Court's exclusive authority to regulate the practice of law in Kansas.

We agree with the district court that individuals who are licensed to practice law in Kansas are exempt from regulation by the OSBC. The OSBC exemption does not apply to a limited liability company or any other entity that is not licensed to practice law by the Kansas Supreme Court. See K.S.A. 50-1116(b).

The Petitioners' ultimate goal is to obtain an exemption from the OSBC's oversight. This is a challenge to the OSBC's interpretation and application of the exemption statute administered by the OSBC, not a challenge to the constitutionality of the statute itself. Thus, before the Petitioners can bring a declaratory judgment action, they must first follow the procedural rules set forth in the KAPA and the KJRA to

exhaust their available administrative remedies. See *Zarda v. State*, 250 Kan. 364, 371-72, 826 P.2d 1365, *cert. denied* 504 U.S. 973 (1992) (although the Board of Tax Appeals had no power to resolve constitutional issues, the court upheld the district court's dismissal for failure to exhaust administrative remedies).

Moreover, the Petitioners' administrative remedies in this case are not inadequate. See K.S.A. 2011 Supp. 77-612(d). In their declaratory judgment action, the Petitioners sought a declaration that the OSBC lacked "statutory authority over the legal practices of the [Petitioners] based on the attorney exemptions stated in K.S.A. [] 50-1116(b)" and an injunction against the OSBC. Nevertheless, the requested relief was available through the KJRA when properly invoked through judicial review. See K.S.A. 77-622(b). Because the relief sought by the Petitioners was available in the KJRA, the Petitioners' exclusive remedy was through the KJRA. *Zarda*, 250 Kan. at 371; see *Midwest Crane & Rigging, Inc. v. Kansas Corporation Comm'n*, 38 Kan. App. 2d 269, 271-72, 274-75, 163 P.3d 1244 (2007).

Petitioners are required to exhaust their administrative remedies before proceeding with a Chapter 60 declaratory judgment action. The district court did not err in finding that the Petitioners failed to exhaust their administrative remedies.

Affirmed.